**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

_____

| | |
|---|---|
| VIETNAM VETERANS OF AMERICA ET AL. | ) |
| | ) |
| | )    NO. 3:17-cv-01660-AWT |
| Plaintiffs, | ) |
| | ) |
| v. | )    March 8, 2019 |
| | ) |
| DEPARTMENT OF DEFENSE | ) |
| | ) |
| Defendant. | ) |

_____

## PLAINTIFFS' MEMORANDUM FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs Vietnam Veterans of America (VVA), Vietnam Veterans of America's Connecticut State Council (VVA-CT), and Anthony D. Maloni, respectfully submit this memorandum of law pursuant to Federal Rule of Civil Procedure 56 and District of Connecticut Local Rule 56(a) in support of their motion for partial summary judgment. This motion arises out of a Freedom of Information Act (FOIA) request for documents related to the 1966 nuclear accident at Palomares, Spain, and the subsequent cleanup effort, which exposed U.S. servicemembers to ionizing radiation from plutonium. Plaintiffs requested documents related to the accident and its health consequences for those present.

Plaintiffs seek partial summary judgment related to a limited set of redactions in one of Defendant's productions, the "Labat-Anderson Report," which analyzes Palomares veterans' urine samples to estimate how much plutonium they were exposed to ("bioassay data"). The Department of Defense (DoD) has improperly redacted names from the Labat-Anderson Report's list of those who were tested for plutonium exposure, and has improperly redacted the names of the deceased from the bioassay records that follow. DoD marked these redactions

under the Freedom of Information Act's personal privacy exemption, 5 U.S.C. § 552(b)(6).

Plaintiffs request in the first instance that the Court order Defendant to unredact the names of all

of the veterans who gave urine samples from the Report's list, or, at least, unredact the names of

the veterans who are now deceased. Plaintiffs additionally request that Defendant unredact the

names of deceased veterans from the bioassay records in the Report.

This narrow set of issues is ripe for this Court's judgment. Plaintiffs seek partial

summary judgment now because of the delays in Defendant's production of documents, which

are related to review of classified documents from multiple agencies. ECF No. 25 at 2.

Defendant recently received its fifth extension of time, *see id.,* which will prevent the parties

from briefing all issues in this case until at least September 1, 2019, two years and one month

after this complaint was filed. Moreover, a decision now may allow the parties to resolve similar

disputes over redactions without this Court's intervention.

Lifting the redactions on this material now best serves the purpose of FOIA. Defendants

should have released this information to the U.S. servicemembers themselves in 1966.

Withholding it impedes living veterans' ability to provide evidence for their claims for service-

connected disability benefits at the Department of Veterans Affairs, and prevents the public from

fully comprehending the human impact of the U.S. government's response to the 1966 nuclear

weapons accident at Palomares, Spain. The national security rationale that delays Defendant's

release of the remaining responsive documents does not apply to the records at issue here; this

Court can and should lift the redactions that Plaintiffs challenge as soon as possible.

## I.   RELEVANT FACTS AND PROCEEDINGS

On January 17, 1966, a United States Air Force (USAF) B-F2 bomber collided with a

USAF KC-135 tanker aircraft while attempting to refuel, sending four hydrogen bombs tumbling

toward the Spanish coast. Two broke open and released clouds of plutonium dust over

Palomares, Spain. Following the accident, the Air Force sent Plaintiff Anthony Maloni and

approximately 1,600 of his fellow servicemembers to clean up the plutonium that blanketed the

surrounding fields, crops, and homes. Pls.' Ex. 1, Brooks Decl. Ex., B, Labat-Anderson Report,

Vol 1 at ES-1; Pls.' Ex. 2, Maloni Decl. at ¶¶ 3-7.

Today, Palomares veterans like Mr. Maloni who seek disability benefits related to their

participation in this plutonium clean-up from the Department of Veterans Affairs (VA) must

show that it is "at least as likely as not" that their radiogenic conditions — cancers, blood

disorders, and the like — were caused by exposure to radiation while serving at Palomares. 38

C.F.R. § 3.311. Veterans are largely unable to challenge VA denials without an independent

assessment of their radiation dose estimates. *Id.* at § 3.311(a)(3). Mr. Maloni, for example,

provided at least two urine samples; his results are included in the Labat-Anderson Report. Yet

DoD did not enter his results into his medical records. Pls.' Ex. 2, Maloni Decl. at ¶¶ 10-12.

Without his bioassay data, Mr. Maloni was unable to challenge the VA's denial of his service-

connected disability benefits claim by providing an alternative dose estimate. Indeed, Mr. Maloni

did not receive the results from his urinalysis until 2018, after submitting FOIA requests and

filing the above-captioned suit. *Id.* at ¶¶ 15-16; Pls.' Ex. 1, Brooks Decl., Ex. A, Lttr. Enclosing

Apr. 24, 2018 production.

Mr. Maloni is far from the only Palomares veteran from whom the government kept this

bioassay information; a contemporary report discusses withholding from servicemembers the

results of their own urinalysis data due to a fear "that they may be misinterpreted" and "perhaps

set the stage for legal action." Pls.' Ex. 1, Brooks Decl., Ex. E, Odland Report, at 20-21. In

withholding these bioassay records — and the very fact that these individual records and analysis

still exist — the military has denied servicemembers potentially critical radiation dose

information, frustrating valid claims for VA disability compensation.

Plaintiff Anthony Maloni and Plaintiffs VVA and the VVA-CT filed this FOIA action

seeking Department of Defense (DoD) records related to the Palomares incident, including "any

and all records of bioassay data of servicemembers and others present at Palomares." Compl.,

Ex. F, G, H.

As a result of this FOIA litigation, the government has produced, among other

documents, records of Mr. Maloni and other Palomares veterans' urinalysis. Pls.' Ex. 1, Brooks

Decl., Ex. A, Lttr. Enclosing Apr. 24, 2018 production; Ex. B-D, Labat-Anderson Report.

However, Defendant has improperly redacted all of the Palomares veterans' names in the Report

with a "(b)(6)" marker. Pages C-1 through C-18, and C-1.2 of the report list the names of

servicemembers from whom DoD collected bioassay data pertaining to their plutonium exposure

at Palomares. Pls.' Ex. 1, Brooks Decl., Ex. C. The bioassay records themselves — individual

data entry sheets, spreadsheets analyzing the samples, and the like — comprise much of the

remainder of Appendix C.

Defendant has repeatedly requested extensions to its production deadlines, in June,

September, October, December 2018, and most recently February 2019. ECF Nos. 17, 20, 21,

23, 25. Plaintiffs have in good faith acquiesced to all but the last of these extensions. Plaintiffs

now file this partial motion for summary judgment to obtain a small subset of redacted

information, which the Defendant has improperly withheld.

## II.   STANDARD OF REVIEW AND GOVERNING LAW

Congress enacted the Freedom of Information Act "to pierce the veil of administrative

secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*,

425 U.S. 352, 361 (1976). FOIA thus "adopts as its most basic premise a policy strongly

favoring public disclosure of information in the possession of federal agencies," *Halpern v. FBI*,

181 F.3d 279, 286 (2d Cir. 1999), and "repeatedly states that official information shall be made

available to the public for public inspection." *Rose*, 425 U.S. at 361 (internal quotation marks

omitted).

In a case brought under FOIA, "the defendant agency has the burden of justifying

nondisclosure." *Electronic Privacy Information Center v. Dep't of Homeland Security*, 384 F.

Supp. 2d 100, 106 (D.D.C. 2005) (citing 5 U.S.C. § 552(a)(4)(B)). Although FOIA contains

some exemptions from disclosure, "these limited exceptions do not obscure the basic policy that

disclosure, not secrecy, is the dominant objective of the Act." *Rose*, 425 U.S. at 361. Exemptions

to FOIA's broad mandate of agency disclosure are construed narrowly. *See Halpern*, 181 F.3d at

287; *see also Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)

(FOIA exemptions are narrowly construed). This Court reviews withholdings under a FOIA

exemption *de novo*. *See Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d

143, 147 (2d Cir. 2010).

DoD redacted the names at issue under Exemption 6, which permits the government to

shield from disclosure "personnel and medical files and similar files the disclosure of which

would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

However, "judicial interpretation has uniformly reflected the view that no reason would exist for

nondisclosure in the absence of a showing of a clearly unwarranted invasion of privacy." *Rose*,

425 U.S. at 371. Because FOIA Exemption 6 "does not protect against disclosure every

incidental invasion of privacy," *id.* at 382, but rather only "clearly unwarranted" invasions of

privacy, the exemption "instructs the court to tilt the balance in favor of disclosure." *Getman v. NLRB*, 450 F.2d 670, 674 n.11 (D.C. Cir. 1971).

In analyzing withholdings claimed under Exemption 6, the Court must "first determine whether disclosure of the files would compromise a substantial, as opposed to *de minimis*, privacy interest, because if no significant privacy interest is implicated FOIA demands disclosure." *Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 175-176 (2d Cir. 2014) (quotations omitted). However, "the Exemption 6 inquiry does not end whenever a privacy interest has been identified . . . ." *Long v. OPM*, 692 F.3d 185, 192 (2d Cir. 2012). Rather, the court must balance "the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act – to open agency action to the light of 'public scrutiny.'" *Rose*, 425 U.S. at 372 (internal citations omitted).

## III.   ARGUMENT

The narrow and discrete redactions at issue in this motion are ripe for judgment, and resolution at this stage is both appropriate and necessary to effectuate the purpose of FOIA. DoD improperly redacted Appendix C of the Labat-Anderson Report in two ways. First, it has withheld all names from the lists of those tested for exposure to ionizing radiation at Palomares. The names are listed at pages C-13 through C-18 and page C.1-2 of the Appendix, despite that the lists do not reveal information that would raise a *de minimis* privacy interest. DoD has redacted the names listed despite that the lists do not include the veterans' bioassay data, and despite that the public and personal benefit of releasing these names would outweigh any privacy interest that might attach, particularly with regard to the deceased veterans. Second, DoD has withheld the names of deceased veterans from their bioassay records, despite that the privacy

interests of the deceased with regard to this bioassay data is so reduced as to be outweighed by the public interest.

**A.  The challenged redactions are ripe for judgment.**

This Court can and should rule on this narrow set of redactions now. In FOIA cases, courts may evaluate discrete withholdings on motions for partial summary judgment. *See, e.g., Treatment Action Grp. v. Food & Drug Admin. & Dep't of Health & Human Servs.,* No. 15-CV-976, 2016 WL 5171987, at *1 (D. Conn. Sept. 20, 2016) (ruling on partial motions for summary judgment). As a general matter, courts have a broad oversight mandate under FOIA, which "imposes no limits on courts' equitable powers in enforcing its terms," *Treatment Action Grp.* at *6 (citing *Payne Enterprises, Inc. v. United States,* 837 F. 2d 486, 494 (D.C. Cir. 1988)). Moreover, pursuant to FOIA's basic presumption of disclosure, courts have a "duty to prevent unreasonable delays in disclosing non-exempt documents," *Elec. Privacy Info. Ctr. v. Dep't of Justice,* 416 F. Supp. 2d 30, 38 (D.D.C. 2006) (internal quotation marks omitted). And further, this Court's speedy resolution on this narrow set of redactions is paramount given the advanced age — and in some cases, declining health — of Palomares veterans. Accordingly, partial summary judgment in Plaintiffs' favor on the narrow set of redactions challenged here would be both proper and in alignment with FOIA's purpose.

In addition, the Court need not wait to resolve this issue for the Defendant to produce a *Vaughn* index because it is evident from the context what type of information has been improperly redacted. *Vaughn* indices are not always required for a motion for summary judgment to proceed where, as here, the requestor has enough information to proceed without one. *See, e.g.*, *Tannehill v. Dep't of Air Force,* No. CIV. A. 87-1335, 1987 WL 25657, at *1 (D.D.C. Nov. 12, 1987) (declining to require a Vaughn index when all the relevant information it would

contain was already known); *Providence Journal Co. v. United States Dep't of Army*, 769 F.

Supp. 67, 69 (D. R.I. 1991), quoting *Wiener v. FBI*, 943 F.2d 972, 978 (9th Cir. 1991)

("a *Vaughn* Index is not always required as in cases . . . for example when the 'requestor had

acquired sufficient facts to permit the adversary process to function' . . ."). Exemption 6 is a

narrow personal privacy exemption; "(b)(6)"-marked redactions are largely self-explanatory. The

redacted information here is clearly the names of veterans who were tested for plutonium

exposure at Palomares. This Court therefore may, and should, resolve this motion now.

### B.  This Court should order the lists of all tested veterans' names unredacted.

This Court should order the government to unredact all names from the lists of those

veterans whose bioassay data is included in the Labat-Anderson Report. The lists appear at pages

C-3 to C-18, and C-1.2 of the Labat-Anderson Report, Vol II.[1] Disclosing the names in the lists

would not "constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6),

and should therefore be produced because: (1) unredacting the names in the lists only does not

raise substantial privacy concerns; (2) even if the court finds a greater than *de minimis* privacy

interest, disclosing the names will benefit the veterans named in the document and their families;

and (3) disclosure is in the public interest. DoD cannot support its redactions under Exemption 6,

and the Court should therefore order the Defendant to produce the names from the lists.

First, the narrow set of information Plaintiffs here request carries no *de minimis* privacy

interest. As the Second Circuit noted, "[w]hether disclosure of a list of names is a significant or

a *de minimis* threat depends upon the characteristic(s) revealed by virtue of being on the

particular list, and the consequences likely to ensue." *Long v. OPM*, 692 F.3d 185, 192 (2d Cir.

---

[1] The list at C-1.2 is the list of those who received follow-up testing beyond the initial sampling period. It is unclear whether the veterans on this list are also included in the list on pages C-3 through C-18.

2012) (quotation omitted). The lists of Palomares veterans' names at pages C-3 through C-18 and C-1.2, register only that a veteran was present at Palomares, that he gave one or more urine samples to measure his exposure to plutonium, and that his bioassay data is included in the Labat-Anderson Report.

Although there is an identifiable privacy interest in avoiding "embarrassment and harassment" in official or personal affairs, this interest "does not authorize a blanket exemption" for names in all government records. *Seife v. United States Dep't of State*, 298 F. Supp. 3d 592, 625 (S.D.N.Y. 2018) (quotations omitted). That is, the threat must be "real rather than speculative." *Id.* (quotations omitted). The fact that these veterans were tested for exposure to hazardous materials in service to their country is not embarrassing.  Moreover, unredacting their names is not likely to lead to harassment or annoyance, as these veterans have done nothing wrong. *100Reporters LLC v. United States DOJ*, 316 F. Supp. 3d 124, 162 (D.D.C. 2018).[2] Any potential for harassment is too attenuated to present a bar to disclosure, and the potential benefits of disclosure for these veterans and their survivors outweighs any risk. Thus, disclosure of names here does not raise a substantial privacy interest.

Second, even if the court finds more than a *de minimis* privacy interest here, the public interest still tips the balance in favor of disclosure. Unredacting the names of the veterans who were tested at Palomares will benefit those veterans and their survivors. The U.S. government never provided Palomares veterans with the results of their urine samples, and many may not

---

[2] The Second Circuit generally uses a five-factor balancing test when weighing the public and private interests at issue under Exemption 6. *Perlman v. Dep't of Justice,* 312 F.3d 100, 107 (2d Cir. 2002), vacated by 541 U.S. 970 (2004), reaff'd, 380 F.3d 110 (2d Cir. 2004). However, the *Perlman* test was developed for FOIA requestors seeking information against an individual suspected of wrongdoing, which is not at issue in this case, and therefore this Court should not apply it here.

know whether their information was analyzed, or whether it still exists. As Mr. Maloni explains, "From the time I gave my urine samples through receipt of my data in 2018, I did not know whether my urinalysis records still existed. For most of this time, I did not know where I would even go looking for or requesting them." Pls.' Ex. 2, Maloni Decl., at ¶ 14.

FOIA Exemption 6 is not intended to protect individuals from information *about themselves* that the government has long failed to share with them. Rather, when release of personal information is to individuals' benefit, Exemption 6 protections are inappropriate. *See Lepelletier v. FDIC,* 164 F.3d 37, 48 (D.C. Cir. 1999).

By withholding Palomares' veterans' bioassay data from them out of a fear the results "[might] be misinterpreted" and could "perhaps set the stage for legal action." Pls.' Ex. 1, Brooks Decl., Ex. E, Odland Report, at 20-21 — indeed, by withholding the fact that the government even has their individual bioassay results — the military has denied servicemembers and their families potentially critical information about their radiation exposure. While some veterans may have the wherewithal to submit their own FOIA requests for their bioassay data, many of the large number affected likely do not know that this information is available to them, nor how to obtain it. Disclosing the names of these veterans will provide vital information to those who have been kept in the dark for over fifty years about the location of their and their deceased family members' own records, and provide additional evidence that may be vital for receiving VA benefits. As the *Lepelletier* court said, "It is overly paternalistic to insist upon protecting an individual's privacy interest when there is good reason to believe that he or she would rather have both the publicity and the money than have neither." 164 F.3d at 48 (ordering release of list of names of those with unclaimed bank deposits). Therefore, Exemption 6 should not apply.

Third and last, releasing the information at issue here vindicates the core purpose of FOIA: exercising "citizens' right to be informed about 'what their government is up to.'" *United States DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989). The public, as well as the veterans themselves, have a significant interest in understanding the extent of the harm caused by radiation exposure at Palomares, as well as in knowing who was present there. This document is the only source that Defendant has identified that contains this information, militating disclosure. *See Long* 692 F.3d at 197. Releasing this information will serve the central purpose of FOIA. Palomares was one of the largest nuclear accidents in our nation's history, yet even today the general public does not know who was there. It is a proud tradition in our nation's military history to recognize those who have sacrificed of themselves in service of our country. Providing the public with names instead of black boxes will allow the public to fully appreciate the human cost of the Palomares clean-up, dignifying these veterans' individual experiences.

### C.  In the alternative, DoD improperly withheld the names of deceased veterans from the lists and must disclose them.

Even if the court finds that the government is not required to release the names of all of the veterans tested, the government must unredact the names of the deceased veterans listed on pages C-3-C-18 and C.1.2 of Appendix C. Fifty-three years after they were sent to Palomares, even the youngest veterans of the clean-up are in their 70s. Given their age and the negative effects that radiation exposure has on health, it is likely that a significant number of the servicemembers listed in Appendix C are now deceased.

The Defendant has an obligation under FOIA to determine life status for each veteran listed where, as here, the process required would not be overly burdensome. DoD can run veterans' names and Social Security Numbers (SSNs), available elsewhere in Appendix C,

through the Social Security Death Index (SSDI) to quickly ascertain this information.[3] This is precisely the process that the D.C. Circuit held is required by FOIA in the seminal deceased individuals' privacy case *Schrecker v. U.S.* There, the court found that if the SSNs of individuals in question were already included in responsive documents, it would not be unduly burdensome for the government to run them through the SSDI. 349 F.3d 657, 663 (D.C. Cir. 2003); *see also Schoenman v. FBI*, 573 F. Supp. 2d 119, 151 (D.D.C. 2008).

The *Schrecker* court held that it would be unduly burdensome and potentially violative of privacy for the government to have to run *names* only through the SSDI, as there are likely to be multiple persons in the system with the same name, but Appendix C's inclusion of SSNs — in easily accessible spreadsheet form, no less — negates this concern. 349 F.3d at 664. Therefore, the government must, at a minimum, run Palomares veterans' information through the SSDI, and unredact the names of the deceased veterans from the Report wherever they appear.

**D. DoD must unredact the names from deceased veterans' bioassay records.**

Finally, Defendant must unredact deceased veterans' names from the bioassay data in the remainder of Appendix C. Under FOIA, deceased persons' personal privacy interests in their information are greatly diminished. *Davis v. DOJ*, 460 F.3d 92, 97-98 (D.C. Cir. 2007). Here, the records that should be unredacted include individual urine sample data entry sheets, correspondence with the limited number of veterans who received follow-up testing, and a spreadsheet summarizing the results from each urine sample's testing. Pls.' Ex. 1, Brooks Decl.,

---

[3] Appended as the last 25 pages of the Labat-Anderson Report, Vol. 1, is a spreadsheet that contains the names and SSNs of all of the veterans whose bioassay data is included in Appendix C. Pls.' Ex. 1, Brooks Decl., Ex. B at 139-164. Similar spreadsheets are found in the last 21 pages of Vol. 3 of the Report. Pls.' Ex. 1, Brooks Decl., Ex. D C.3-1—C.3-13. Palomares veterans' names and SSNs are also recorded on the individual data entry forms that comprise the majority of Appendix C. Pls.' Ex. 1, Brooks Decl., Ex. C-D. DoD has redacted all names and SSNs.

Ex. B-D. This bioassay data does not actually reveal whether a veteran had or has any particular diagnosis, or any radiogenic condition at all. It merely reveals how much plutonium the veteran was exposed to while serving his country in 1966. Even if this Court finds that the privacy interest in this information is more than *de minimis*, however, that interest is outweighed by the public interest in release of this information.

Indeed, as explained above, when balancing individuals' privacy interests against the public interest and purpose of FOIA, courts are primarily concerned with sparing individuals from "embarrassment and harassment." *Perlman v. United States DOJ*, 312 F.3d 100, 106 (2d Cir. 2002). Deceased persons do not feel embarrassment and cannot be harassed, so the traditional markers of a substantial privacy interest are not present. *See id.* (citing *Halpern*, 181 F.3d at 297). Deceased Palomares veterans' survivors may in fact take some comfort in finally understanding the extent of their loved ones' exposure, or value this expanded knowledge for their family medical histories. Finally, the public has an interest in fully comprehending the human cost of exposure at Palomares — numbers do not denote people, names do. Therefore, the public interest in access to this information outweighs any greater than *de minimis* privacy interest present.

## CONCLUSION

Disclosing the information with negligible privacy implications at issue here would further FOIA's purposes. Plaintiffs therefore respectfully request that the Court order the release of improperly withheld names from the lists of Palomares veterans whose bioassay data is included in Appendix C of the Labat-Anderson Report — or in the alternative, the names of the deceased Palomares veterans — and the names of deceased veterans from their bioassay records.

Respectfully submitted,

By: /s/ Renée Burbank
Meghan Brooks, Law Student Intern
Molly Petchenik, Law Student Intern[*]
Laurel Raymond, Law Student Intern[**]
Renée Burbank, Attorney, ct30669
Jerome N. Frank Leg. Servs. Org.
Yale Law School[†]
P.O. Box 209090
New Haven, CT 06520-9090
Telephone: 203-432-4800
Fax: 203-432-1426
Email: renee.burbank@ylsclinics.org

*Counsel for Plaintiffs*

---

[*] Motions for law student appearances forthcoming.
[†] This brief does not purport to represent the views of Yale Law School, if any.

## Table of Contents of Exhibits to Summary Judgment

| Exhibit Number to Mot. for Sum. J. | Description |
|---|---|
|  |  |
| Exhibit 1 | Declaration of Meghan Brooks, Law Student Intern (March 8, 2019) |
| Exhibit 1-A | Letter from Col. W. C. Culver to M. Wishnie, April 24, 2018 |
| Exhibit 1-B | Labat-Anderson Report, Vol. 1 (April 2001) |
| Exhibit 1-C *in three parts due to file size* | Labat-Anderson Report, Vol. 2 (April 2001) |
| Exhibit 1-D | Labat-Anderson Report, Vol. 3 (April 2001) |
| Exhibit 1-E | Odland Report (October 26-28, 1966) |
| Exhibit 2 | Declaration of Anthony Maloni (March 6, 2019) |