```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

-------------------------------- x
VIETNAM VETERANS OF AMERICA;     :
CONNECTICUT STATE COUNCIL OF     :
VIETNAM VETERANS OF AMERICA;     :
and ANTHONY D. MALONI,           :
                                 :
          Plaintiffs,            :
                                 :
v.                               :   Civil No. 3:17-cv-1660(AWT)
                                 :
DEPARTMENT OF DEFENSE,           :
                                 :
          Defendant.             :
-------------------------------- x
```

**RULING ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs Vietnam Veterans of America, Connecticut State Council of Vietnam Veterans of America, and Anthony D. Maloni bring this action pursuant to the Freedom of Information Act, 5 U.S.C. § 552, claiming that the Department of Defense improperly redacted names in certain documents it produced. The parties have filed cross-motions for partial summary judgment. For the reasons set forth below, the plaintiffs' motion is being denied and the defendant's motion is being granted.

I.  **FACTUAL BACKGROUND**

Plaintiff Vietnam Veterans of America ("VVA") is a Congressionally-chartered national membership organization that advocates on issues important to veterans, seeks full access to quality health care for veterans, and works to identify the full range of disabling injuries and illnesses incurred during

military service. Plaintiff Connecticut State Council of Vietnam Veterans of America ("VVA-CT") is based in East Hartford, Connecticut, and seeks to connect and advocate on behalf of Vietnam-era veterans who reside in Connecticut. Plaintiff Anthony D. Maloni ("Maloni") is a Vietnam-era veteran who served in the United States Air Force ("USAF") from 1964 to 1968. Defendant United States Department of Defense ("DOD") is the federal agency responsible for coordinating and supervising government activity related to national security and the United States Armed Forces.

This case arises out of Maloni's requests for Veterans Administration ("VA") benefits related to his involvement in the 1966 Palomares nuclear cleanup operation. To receive benefits in connection with a radiogenic disease, veterans must demonstrate that they participated in a "radiation-risk activity" while serving on active duty. 38 U.S.C. § 1112(c)(3). Presently, the Palomares cleanup operation is not recognized as a "radiation-risk activity" by the VA.

This case concerns seven FOIA requests for records related to the 1966 Palomares nuclear accident in Palomares, Spain. Four requests were submitted by Maloni and three requests were submitted by VVA and VVA-CT. The plaintiffs sought documents containing the results of urine sampling conducted by DOD to measure the plutonium contamination levels in the bodies of the

airmen who participated in the cleanup. Maloni's urinalysis results were never entered into his service medical records.

By letter dated March 2, 2017, Maloni submitted three FOIA requests to the following DOD agencies: FOIA Public Liaison of the Defense Threat Reduction Agency ("DTRA"), the Surgeon General of the Air Force Medical Support Agency ("AFMSA"), and the USAF Center for Radiation Dosimetry ("AFCRD"). Maloni sought "all records and decisions related to Anthony Maloni" and "all records [DTRA, AFMSA, and AFCRD] may have related to the Palomares incident." (Compl., Exs. A-C, at 1-9, ECF No. 1-1.) By letter dated March 20, 2017, Maloni submitted a FOIA request to the Air Force Headquarters ("AFHQ"). Maloni sought "all records and decisions related to Anthony Maloni" and "all records [AFHQ] may have related to the Palomares incident." (Id., Ex. D, at 11-12.) By letter postmarked March 28, 2017, DTRA acknowledged receipt of Maloni's FOIA request and assigned FOIA Case No. 17-036 to the request. By letter dated June 13, 2017, VVA and VVA-CT submitted FOIA requests to DTRA, AFCRD, and AFHQ seeking "records related to the Palomares hydrogen bomb incident." (Id., Exs. F-H, at 17-30.)

The plaintiffs brought this action to compel DOD to produce requested documents. As a result of this litigation, DOD has produced, among other documents, a document titled "Palomares Nuclear Weapons Accident-Revised Dose Evaluation Report,"

prepared in 2001 by Labat-Anderson Incorporated (the "Labat-Anderson Report"). Appendix C of the Labat-Anderson Report contains a list of the names of the service members from whom DOD collected bioassay data pertaining to their plutonium exposure; the list is followed by the bioassay records themselves, which include data-entry sheets and spreadsheets analyzing the samples. DOD's production redacted, with FOIA Exemption 6 markers, all names of individuals who provided urine specimens. DOD also produced a memorandum from "HQ AFSEC/SEWN," a component of the Air Force, dated February 15, 2018, regarding "Urine Bioassay Sample Results for Palomares Response Veteran Anthony Maloni [redaction], 1964-1968 (FOUO)." (Pls.' Mot. Partial Summ. J., Ex. 1-A, at 2-5, ECF No. 30-4.) On April 3, 2019, DOD produced the two pages of the Labat-Anderson Report that contain Maloni's name, with his name unredacted. (See Def.'s Mem. in Supp. Mot. Partial Summ. J. 3, ECF No. 33-1.)

The plaintiffs maintain that DOD has improperly redacted names from the Labat-Anderson Report's list of those who were tested for plutonium contamination levels, and has improperly redacted the names of deceased veterans from the bioassay records that follow.

**II. LEGAL STANDARD**

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to

be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Rogoz v. City of Hartford, 796 F.3d 236, 245 (2d Cir. 2015) (quoting Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010)) (citing Fed. R. Civ. P. 56(a)). "The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. (quoting Kaytor, 609 F.3d at 545) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

When reviewing the evidence on a motion for summary judgment, "'the court must draw all reasonable inferences in favor of the nonmoving party,' Reeves, 530 U.S. at 150, 'even though contrary inferences might reasonably be drawn,' Jasco Tools Inc. v. Dana Corp., 574 F.3d 129, 152 (2d Cir. 2009)." Kaytor, 609 F.3d at 545.

The court's burden does not shift when cross-motions for summary judgment are before it. See Brooke v. Home Life Ins. Co., 864 F. Supp. 296, 299 (D. Conn. 1994). Each motion must be decided on its own merits. See Schwabenbauer v. Bd. of Educ., 667 F.2d 305, 314 (2d Cir. 1981). The mere fact that both parties insist that no material issues of fact exist "does not establish that a trial is unnecessary." 10A C. Wright, A. Miller

& M. Kane, Federal Practice and Procedure § 2720, at 17 (2d ed. 1983).

"In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994). "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." Id. "Affidavits submitted by an agency are 'accorded a presumption of good faith'; accordingly, discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face." Id. (quoting Safecard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). "When this is the case, the district court may 'forgo discovery and award summary judgment on the basis of affidavits.'" Id. (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)).

**III. DISCUSSION**

FOIA was enacted "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of the Air Force v. Rose, 425 U.S. 352, 361

(1976). "FOIA strongly favors a policy of disclosure and requires the government to disclose its records unless its documents fall within one of the specific, enumerated exemptions set forth in the Act." Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356 (2d Cir. 2005) (citing 5 U.S.C. § 552(a)(3), (b)(1)-(9)). Courts construe these exemptions narrowly, resolving all doubts "in favor of disclosure." Local 3, Int'l Bhd. of Elec. Workers v. NLRB, 845 F.2d 1177, 1180 (2d Cir. 1988). The government bears the burden of showing "that any claimed exemption applies." Nat'l Council of La Raza, 411 F.3d at 356. Courts review the government's decision to withhold or redact information de novo. See 5 U.S.C. § 552(a)(4)(B).

FOIA Exemption 6 protects against disclosure that implicates personal privacy interests. The government may withhold records in "personnel and medical files and similar files" only when their release "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Exemption 6 is intended to 'protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information.'" Wood v. Fed. Bureau of Investigation, 432 F.3d 78, 86 (2d Cir. 2005) (quoting U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 599 (1982)).

"Whether . . . names and other identifying information . . . may be withheld under Exemption 6 is a two-part inquiry." Id.

> First, we must determine whether the personal information is contained in a file similar to a medical or personnel file. In considering whether the information is contained in a "similar" file, we ask whether the records at issue are likely to contain the type of personal information that would be in a medical or personnel file. . . . At the second step of the analysis under Exemption 6, we balance the public's need for the information against the individual's privacy interest to determine whether the disclosure of the names would constitute a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); U.S. Dep't of State v. Ray, 502 U.S. 164, 175 (1991).

Wood, 432 F.3d at 86 (citation omitted).

It is undisputed that the initial requirement for Exemption 6 is met here, i.e., the personal information is contained in a file similar to a medical or personnel file. Therefore, the court must determine whether the defendant has established that disclosure of the veterans' names is a clearly unwarranted invasion of personal privacy.

"To make this determination, a court must balance the public's interest in disclosure against the individuals' privacy interests." Wood, 432 F.3d at 87 (citing Rose, 425 U.S. at 372). "The privacy side of the balancing test is broad and 'encompasses all interests involving the individual's control of information concerning his or her person.'" Id. at 88 (quoting

Hopkins v. U.S. Dep't of Hous. & Urban Dev., 929 F.2d 81, 87 (2d Cir. 1991)). "On the other side of the balance, the relevant interest is 'the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to.'" Id. (alteration in original) (quoting Bibles v. Or. Nat. Desert Ass'n, 519 U.S. 355, 355-56 (1997)).

"The analysis is context specific. 'Names and other identifying information do not always present a significant threat to an individual's privacy interest.'" Long v. Office of Pers. Mgmt., 692 F.3d 185, 191 (2d Cir. 2012) (quoting Wood, 432 F.3d at 88); accord Ray, 502 U.S. at 176 n.12 ("We emphasize, however, that we are not implying that disclosure of a list of names and other identifying information is inherently and always a significant threat to the privacy of the individuals on the list."). "[W]hether disclosure of a list of names is a significant or de minimis threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue." Id. at 192 (alteration in original) (quoting Ray, 502 U.S. at 176 n.12).

In Federal Labor Relations Authority v. U.S. Department of Veterans Affairs, 958 F.2d 503 (2d Cir. 1992), the Federal Labor Relations Authority sought to enforce its order finding that the United States Department of Veterans Affairs "committed an

unfair labor practice in refusing to release to its employees' exclusive representative, the National Association of Government Employees (union), the names and home addresses of bargaining unit employees." Id. at 505. The court took note of the fact that the information was sought by the employees' union but observed: "Yet, the Supreme Court teaches that the purposes for which the request was made and the identity of the requesting party--contrary to what the FLRA and the union urge--have no bearing on the merits of FOIA request. A member of the public has as much right to disclosure as a person or group with a special interest." Id. at 510. The court concluded:

> In sum, it cannot be said that one's name and address, coupled with that individual's status as a federal employee--the appropriate inquiry--is generally publicly available. In light of Congress' recognition in FOIA and the Privacy Act of the threat to privacy that is occasioned by compilations of this type of data, we are compelled to conclude that a more than de minimis privacy interest is threatened by disclosure.

Id. at 511.

At issue in Associated Press v. U.S. Department of Defense, 554 F.3d 274 (2d Cir. 2009), was whether DOD should be ordered "to disclose identifying information of Guantanamo Bay detainees contained in DOD records documenting allegations of abuse by military personnel and by other detainees, and identifying information of family members contained in personal letters sent to two detainees and submitted by those detainees to

Administrative Review Boards . . . ." Id. at 279. The court concluded that "the detainees, both those who have suffered abuse and those who are alleged to have perpetrated abuse, have a measurable privacy interest in the nondisclosure of their names and other identifying information in these records." Id. at 286. With respect to "the detainees who allegedly have been abused by military personnel or other detainees," the court stated:

> Certainly they have an interest in both keeping the personal facts of their abuse from the public eye and in avoiding disclosure of their identities in order to prevent embarrassment. As victims of abuse, they are entitled to some protection of personal information that would be revealed if their names were associated with the incidents of abuse. The disclosure of their names could certainly subject them to embarrassment and humiliation.

Id. at 287.

At issue in Long was whether "a data-gathering, research, and distribution organization" could obtain "records and data from OPM's Central Personnel Data File ('CPDF')." 692 F.3d at 188. "In addition to each employee's name, the CPDF's other fields include salary history, duty station, occupation, work schedule, and veteran status." Id. With respect to the plaintiffs' contention that the federal employees' privacy interest in their names was minimal or non-existent, the court observed: "But the bar is low: 'FOIA requires only a measurable interest in privacy to trigger the application of the disclosure

balancing tests.'" Id. at 191 (quoting Fed. Labor Relations Auth., 958 F.2d at 510). In addition, the court noted:

> It is not uncommon for courts to recognize a privacy interest in a federal employee's work status (as opposed to some more intimate detail) if the occupation alone could subject the employee to harassment or attack. Courts have recognized, for example, a privacy interest in the names of employees who worked on the regulatory approval of a controversial drug, see Judicial Watch, Inc. v. FDA, 449 F.3d 141, 152–53 (D.C. Cir. 2006), and of law enforcement agents who participated in an investigation, see Wood, 432 F.3d at 86–89; Nix v. United States, 572 F.2d 998, 1006 (4th Cir. 1978).

Long, 692 F.3d at 192 (emphasis added).

Here, the personal information at issue is whether individuals had samples of their urine tested to measure plutonium contamination levels--and in the case of deceased veterans, their bioassay records, which include data-entry sheets and spreadsheets analyzing their urine samples. It is undisputed that there is a negative correlation between radiation exposure and health. (See Pls.' Local Rule 56(a)(2) Statement at ¶ 13, ECF No. 37-2.) Thus, the personal information at issue here falls into the category of what Long refers to as "some more intimate detail." More will be disclosed about these individuals than the mere fact that they are veterans, and the court concludes that there is a more than de minimis threat to the privacy interests of the individuals whose names have been redacted.

In support of their position that the defendant must unredact the names of deceased veterans, the plaintiffs assert, citing to Davis v. Department of Justice, 460 F.3d 92 (D.C. Cir. 2007), that "[d]eceased persons' personal privacy interests in their information are greatly diminished," (Memo. Supp. Pls.' Opp'n to Defs.' Cross-Mot. Summ. J. 6, ECF No. 37). But in Davis, the court stated only that "[w]e have recognized 'that the privacy interest in nondisclosure of identifying information may be diminished where the individual is deceased.'" 460 F.3d at 98 (emphasis added) (quoting Schrecker v. U.S. Dep't of Justice, 349 F.3d 657, 661 (D.C. Cir. 2003)). "Indeed, the 'fact of death, . . . while not requiring the release of information, is a relevant factor to be taken into account in the balancing decision whether to release information.'" Id. (alteration in original) (quoting Schrecker, 349 F.3d at 661).

While death may have diminished the privacy interests of deceased veterans, it did not render those interests de minimis, and it does not diminish at all the privacy interests of their survivors. As to deceased veterans, they still have "a measurable privacy interest because the information that would be revealed by disclosure is the type of information that a person would ordinarily not wish to make known about himself or herself." Associated Press, 554 F.3d at 292. The personal information is bioassay records including data-entry sheets and

-13-

spreadsheets reflecting the analysis of their urine samples taken to measure the plutonium contamination levels in their bodies. As to the survivors of deceased veterans, there is a negative correlation between radiation exposure and health, and the court agrees with the plaintiffs that "[d]eceased Palomares veterans' survivors may in fact take some comfort in finally understanding the extent of their loved ones' exposure, or value this expanded knowledge for their family medical histories."[1] (Pls.' Memo. for Partial Summ. J. 13, ECF No. 30-1.) Because of the nature of the information that would be disclosed about them, the survivors of deceased veterans have a more than de minimis privacy interest in their family medical histories.

Moreover, the "fact of death," as recognized in Davis, does not require the release of names, but rather "is a relevant factor to be taken into account in the balancing decision whether to release information." 460 F.3d at 98 (quoting

---

[1] See, e.g., Mark S. Pearce et al., Still-Births among the Offspring of Male Radiation Workers at Sellafield Nuclear Reprocessing Plant: Details Results and Statistical Aspects, 165 J. Royal Stat. Soc'y A 523, 543-46 (2002), https://doi.org/10.1016/S0140-6736(99)04138-0 (finding a statistical correlation between radiation exposure to fathers and the likelihood that their children are still-born); D. Hollander, Digest: Infants Fathered by Men Who Are Exposed to Radiation in the Workplace Have an Elevated Risk of Being Stillborn, 32 Perspectives on Sexual & Reprod. Health, no. 2, Mar.-Apr. 2000, https://www.guttmacher.org/journals/psrh/2000/03/infants-fathered-men-who-are-exposed-radiation-workplacehave-elevated-risk.

Schrecker, 349 F.3d at 661). In Long, the court recognized that "[w]here public interest favoring disclosure is no more than minimal, a lesser privacy interest suffices to outweigh it." 692 F.3d at 194. As discussed below, the public interest favoring disclosure here is no more than minimal, so even if the privacy interests of deceased veterans and their survivors are, in fact, diminished ones, they nonetheless suffice to outweigh any public interest that could be properly considered here.

Because a measurable privacy interest exists, the court must balance the identified "privacy interest against FOIA's basic purpose of opening agency action to the light of public scrutiny." Associated Press, 554 F.3d at 293. "[T]he identification of this privacy interest means . . . that the FOIA requester will have to show how release of the . . . names . . . will further the public interest." Id. at 287 n.13. However, the burden of establishing that the invasion of the more than de minimis privacy interest is "clearly unwarranted" remains with the government.

With respect to the public interest in disclosure, the plaintiffs argue that:

> [R]eleasing the information at issue here vindicates the core purpose of FOIA: exercising "citizens' right to be informed about 'what their government is up to.'" U.S. DOJ v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 773 (1989). The public, as well as the veterans themselves, have a significant interest in understanding the extent of the harm

> caused by radiation exposure at Palomares, as well as
> in knowing who was present there. This document is the
> only source that Defendant has identified that
> contains this information, militating disclosure. See
> Long, 692 F.3d at 197. Releasing this information will
> serve the central purpose of FOIA. Palomares was one
> of the largest nuclear accidents in our nation's
> history, yet even today the general public does not
> know who was there. It is a proud tradition in our
> nation's military history to recognize those who have
> sacrificed of themselves in service of our country.
> Providing the public with names instead of black boxes
> will allow the public to fully appreciate the human
> cost of the Palomares clean-up, dignifying these
> veterans' individual experiences.

(Pls.' Memo. for Partial Summ. J. 11.) The objectives referenced by plaintiffs are very worthwhile. However, they fall under what Long describes as "the 'derivative theory' of public interest." 692 F.3d at 194. "The only public interest cognizable under FOIA is the public understanding of the operations or activities of the government." Id. at 193. "[T]he focus, in assessing a claim under Exemption 6, must be solely upon what the requested information reveals, not upon what it might lead to." Associated Press, 554 F.3d at 292.

What the defendant has already disclosed gives the public the requisite understanding of the operations and activities of the government. Although the plaintiffs assert that unredacting the names will inform citizens of what their government was up

to in connection with the Palomares nuclear accident, they offer no explanation of how this will be a result.

The plaintiffs make the point that the veterans themselves and the public have a significant interest in understanding the extent of the harm caused by radiation exposure at Palomares, as well as knowing who was present there. The government has disclosed the information about the Palomares nuclear accident with the exception of the names of the veterans who were present there. Unredacting the names will not provide any additional information as to the extent of the harm caused by the radiation exposure other than identifying the individuals who were harmed. It will not, in and of itself, increase the public's understanding of the operations or activities of the government in connection with the Palomares nuclear accident.

The plaintiffs assert that the fact that the Labat-Anderson Report is the only document identified by DOD that contains information about the Palomares nuclear accident militates disclosure. As to the names of the veterans, it is not apparent how that is so.

The plaintiffs state, correctly, that those who make sacrifices in serving our country should be recognized and that providing the public with the names of the veterans will allow the public to fully appreciate the human cost of the Palomares nuclear accident and dignify the individual experiences of the

veterans who were there. But this is clearly a derivative theory of public interest. Engaging in these worthwhile activities would not do anything to further public understanding of the operations or activities of the government in connection with the Palomares nuclear accident.

The plaintiffs also observe that "[u]nredacting the names of the veterans who were tested at Palomares will benefit those veterans and their survivors," because the government "never provided Palomares veterans with the results of their urine samples, and many may not know whether their information was analyzed, or whether it still exists." (Pls.' Memo. in Supp. Mot. Partial Summ. J. 9-10.) While that would likely be the result, this too is a derivative theory of public interest. Again, the public understanding of the government's operations or activities in connection with the Palomares nuclear accident would not be furthered.

The court concludes that the plaintiffs have failed to identify any way in which the public interest in understanding the operations or activities of the government will be furthered by unredacting the names. This is a critical failing because "[t]he only public interest cognizable under FOIA is the public 'understanding of the operations or activities of the government.'" <u>Long</u>, 692 F.3d at 193 (quoting <u>U.S. Dep't of</u>

Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 775 (1989)).

Because of the absence here of any public interest cognizable under FOIA, and the presence of measurable privacy interests of the veterans, as well as deceased veterans and their survivors, the court concludes that DOD has met its burden of demonstrating that unredacting the veterans' names would constitute a clearly unwarranted invasion of personal privacy.

**IV. CONCLUSION**

For the reasons set forth above, the plaintiffs' Motion for Summary Judgment (ECF No. 30) is hereby DENIED and the defendant's Cross-Motion for Summary Judgment (ECF No. 33) is hereby GRANTED.

It is so ordered.

Dated this 8th day of April 2020, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge